**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| BRYANT MEADOWS | * | |
|  | * | |
| Plaintiff | * | |
|  | * | |
| VS. | * | NO: 5:06CV00223   SWW |
|  | * | |
| HOLLAND USA, INC. | * | |
|  | * | |
| Defendant | * | |
|  | * | |

**ORDER**

Plaintiff Bryant Meadows ("Meadows") brings this employment discrimination case against Holland U.S.A., Inc. ("Holland"), claiming that Holland terminated his employment based on disability, in violation of the Americans with Disabilities Act ("ADA"), and because of his race in violation of Title VII of the 1964 Civil Rights Act. Before the Court is Holland's motion for summary judgment (docket entries #21, #22, #23), Meadows' response in opposition (docket entries #38, #19, #30, #31, #32), and Holland's reply (docket entry #35). After careful consideration, and for the reasons that follow, summary judgment will be granted in favor of Holland.

**I.**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must

demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

Unless stated otherwise, the following facts are undisputed. Meadows, who is black, began working for Holland in February 2002 as a machine operator. On September 20, 2005, Meadows submitted an on-the-job injury report to his supervisor, Phil McCrory, stating that a piece of metal got under his safety glasses. *See* docket entry #23, Ex. #5, at 21. On September 29, 2005, Meadows saw Dr. Robert L. Berry, an ophthalmologist, regarding his work-related injury.

Dr. Berry determined that Meadows had a lacerated cornea, and he provided a written statement that Meadows would not be "able to work for (probably) a few days." *Id.*, at 23. Meadows obtained a second statement from Dr. Berry, dated October 4, 2005, stating, "Mr. Meadows may return to work next week. He is recovering well from his corneal laceration." *Id.*,

at 25. Meadows remained off work, with pay, from the time of his accident on September 20, 2005, until October 10, 2005, and his related medical expenses were paid through Holland's workers' compensation insurance. Having been released to return to work by Dr. Berry with no restrictions, Meadows returned to work on October 10, 2005.

On November 11, 2005, Meadows worked the day shift. He had a scheduled lunch break from 12:00 to 12:40 and a scheduled safety meeting at 12:40. According to McCrory's affidavit testimony submitted in support of Holland's motion for summary judgment, Meadows returned from lunch five minutes late. Docket entry #23, Ex. #1, at 2. McCrory, however, denies that he was late.

Sometime after the 12:40 safety meeting, McCrory attempted to give Meadows a disciplinary warning regarding his alleged tardiness. McCrory summoned Meadows to a conference room, where McCrory and a union representative were present. McCrory testifies that Meadows entered the conference room, muttered something, and left. He states that he and the union representative followed Meadows and asked him to return the conference room, but Meadows refused, whereupon McCrory sought help from another supervisor, Levill Cobb. Cobb testifies that he explained to Meadows that he needed to return to the conference room, Meadows refused to return, and Cobb suspended him from work. *See* docket entry #23, Ex. #2, at 13-15.

Meadows' recollection of events is different. He claims that he Cobb instructed him to sign a written disciplinary warning for tardiness, and his union representative told him he was not required to sign it. Docket entry #31, Ex. #5, at 54-55. Meadows states that he left the conference room after he received permission to leave, and Cobb followed him and instructed

him to sign the written warning. *Id*. Meadows states that when he failed to sign the warning, Cobb stated: "[If] you can't do what I tell you to do, clock out." *Id*. Meadows states that he left the building, but returned at the request of his union representative. Meadows states that after he returned, Randy Fletcher, the human resources manager, and Charles Swopes, the general foreman, told him his was suspended from work until further notice. *Id*. at 60.

By letter dated November 30, 2005 Holland terminated Meadows, stating insubordination as the reason for termination.[1]

On March 29, 2006, Meadows filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that Holland terminated his employment because of a disability in violation of the Americans with Disabilities Act. *See* docket entry #35, Ex. B. Meadows amended his discrimination charge, adding that Holland discharged him because of his race. *See* docket entry #25, Ex. B.  On June 13, 2006, the EEOC issued Meadows a right to sue notice. *See* docket entry #31, Ex. #3.

On August 26, 2006, Meadows commenced this lawsuit, claiming that Holland terminated his employment because of his race and because Holland believed he had a disability.

**III.**

Holland asserts the following grounds for summary judgment: (1) Meadows is unable to make out a prima facie case of discrimination under the ADA; (2) Meadows failed to exhaust his

---

[1] In its statement of undisputed facts, Holland refers to the termination letter and indicates that a copy of the letter is included in the record as Exhibit 7 to Meadows' deposition, but neither Holland nor Meadows have actually submitted a copy of the letter. However, it is clear from Meadows' brief in opposition to summary judgment that he does not dispute that the November 30, 2005 letter states that he was terminated for insubordination. *See* docket entry #30, at 4("Meadows was terminated for insubordination.").

administrative remedies under Title VII regarding his race discrimination claim; and (3) Meadows is unable to rebut Holland's legitimate reason for his termination. The Court will consider each argument separately.

      Disability Discrimination - ADA

Because Meadows presents no direct evidence of disability discrimination, his claim is properly evaluated under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). First, Meadows must establish a prima facie case of discrimination: an ADA-qualifying disability; qualifications to perform the essential functions of his position with or without a reasonable accommodation; and an adverse action due to his disability. *See Simonson v. Trinity Regional Health System*, 336 F.3d 706, 709 (8th Cir. 2003)(citing *Spangler v. Federal Home Loan Bank of Des Moines*, 278 F.3d 847, 850 (8th Cir.2002)).

Holland asserts that Meadows is unable to show that he has a qualifying disability, and the Court agrees. "Disability" under the ADA is defined as "[A] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

"Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). An individual is substantially limited in performing a major life activity where that individual is "[u]nable to perform" or is "[s]ignificantly restricted as to the condition, manner or duration under which" he can perform a particular major life activity. *Id.* § 1630.2(j)(1)(i), (ii). A

substantial limitation on the major life activity of working means that an individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." *Id*. § 1630.2(j)(3)(i).

Meadows cannot show that he suffered from a disability based solely on the temporary work restrictions imposed by Dr. Berry as a result of a corneal laceration. Meadows contends that Holland regarded him as having a disability because of his eye injury, but he presents no evidence indicating that Holland perceived him as having an impairment that significantly restricted his ability to perform a major life activity.[2] Because Meadows presents no evidence of a qualifying disability under the ADA, the Court finds no issues for trial with respect to his ADA claim.

<u>Race Discrimination - Title VII</u>

*Exhaustion of Administrative Remedies*. Title VII requires claimants to timely file a discrimination charge with the EEOC before bringing a Title VII action in court. *See* 42 U.S.C. § 2000e-5(e)(1). To exhaust Title VII's administrative remedies an individual must (1) timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge within 180 days of the alleged discrimination and (2) receive notice from the EEOC of the right to sue. *See* 42 U.S.C. § 2000e-5(b), (c), (e).

It is undisputed that the sole claim asserted in Meadows' original EEOC charge filed on March 29, 2006 is that Holland terminated his employment because of disability. Holland asserts that Meadows amended his EEOC charge to include race discrimination on June 6, 2006,

---

[2]In deposition, Meadows testifies that members of management asked him about the condition of his eye after he returned from work and he replied that he had a scar, but otherwise felt "pretty good," and "it was doing fine and stuff." Docket entry #23, Ex. #1, at 64-65.

more than 180 days after his termination.[3]  It is undisputed that Meadows' EEOC charge, as amended, includes his initials and "6/6/06" immediately below his amended allegations regarding race discrimination.  However, Meadows contends that he amended his EEOC charge on March 29, 2006, the very day he filed it.

Failure to exhaust administrative remedies is an affirmative defense that a defendant must prove, *see Miles v. Bellfontaine Habilitation Center*, 481 F.3d 1106, 1107 (8th Cir. 2007), and Holland has failed to carry its burden on this issue.  Neither party provides testimony regarding the date on which Meadows amended his EEOC charge, and the Court is unable to determine this issue based solely on a copy of the EEOC charge.

*Pretext and Inference of Discrimination*.  Holland has come forward with evidence that it terminated Meadows' employment based on insubordination.  Accordingly, in order to avoid summary judgment, Meadows must show pretext by discrediting Holland's asserted reason for his termination.[4]  He must also show that the circumstances permit a reasonable inference that race was the real reason for his termination.  *See Johnson v. AT & T Corp*., 422 F.3d 756, 763 (8th Cir. 2005)(citing *Reeves v. Sanderson Plumbing Prods., Inc*. 530 U.S. 133, 146-47, 120 S.Ct.

---

[3]Under 29 C.F.R. § 1601.12(b), an amendment to an EEOC charge may relate back to the filing date of the original charge if the amendment (1) corrects technical defects or omissions, (2) clarifies or amplifies allegations made in the original charge, or (3) adds additional Title VII violations that relate to or grow out of the subject matter of the original charge.  In this case, Meadows' race discrimination allegations contained in his EEOC charge are distinct from his allegations regarding disability discrimination and contain no mention of race discrimination.

[4][I]f an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext and the determinative issue of causation when bypassing the prima facie case analysis leads to clarity in framing the issue under review." *Stewart v. Independent School Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007).

2097 (2000); *Spencer v. Stuart Hall Co.*, 173 F.3d 1124, 1128 (8th Cir.1999)).

Meadows contends that this case "boils down to who do you believe" regarding Holland's asserted reason for terminating him. The Court finds, however, that the dispositive issue is whether Meadows has come forward with sufficient evidence that his race was the real reason for his termination.

Meadows employs a disparate treatment theory in an effort to show race discrimination. He claims that two white employees, George Watson and T.G. Christman, refused to obey orders from their supervisors and were never disciplined for their insubordination.  With respect to George Watson, Meadows testified: "They wanted him to work on the dog-boxing–I mean, wanted him to put out more dog-boxing, and he'd tell them no, you do it yourself." Docket entry #31, Ex. #5, at 73. Meadows testifies that in Christman's case, "they asked him to go to the painting line and work over, [and he told them] no, I'm not going over there, that's not my job." *Id*., at 75. Meadows also claims that Holland employees "Sharon Shannon, Chevy Balue and T.J. Christman, white employees, were all hurt on the job but were not terminated for disability or perceived disability." *Id*. at 72.

Meadows provides no information as to whether his testimony regarding other employees is based on his personal knowledge, and he provides no independent evidence to substantiate his testimony. *See Davenport v. Riverview Gardens Sch. Dist*., 30 F.3d 940, 945 (8th Cir. 1994)(affirming summary judgment for employer on plaintiff's claim of racial discrimination where plaintiff offered no independent evidence of disparate treatment, only his own unsubstantiated deposition testimony).

Furthermore, Meadows has the burden of showing that he and employees who allegedly

received favorable treatment were similarly situated in all relevant respects.  *See E.E.O.C. v. Kohler Co.* 335 F.3d 766, 775 -776 (8th Cir. 2003)(citing  *Lynn v. Deaconess Medical Ctr.-West Campus,* 160 F.3d 484, 487 (8th Cir.1998)).   "[T]he individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'"  *Morgan v. A.G. Edwards & Sons, Inc.,*  486 F.3d 1034, 1043 (8th Cir. 2007)(citing *EEOC v. Kohler Co.*, 335 F.3d 766. 775 (8th Cir. 2003)).  Meadows' testimony fails to meet this rigorous standard.

In sum, the Court finds that Meadows has failed to present evidence showing that his race played any role in the decision to terminate his employment.  Accordingly, Holland is entitled to summary judgment.

**IV.**

For the reasons stated, Defendant's motion for summary judgment (docket entry #21) is GRANTED.  There being no issues remaining for trial, pursuant to the judgment entered together with this order, this case is DISMISSED WITH PREJUDICE

IT IS SO ORDERED THIS 4TH DAY OF FEBRUARY,  2008.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE